# Third District Court of Appeal

## State of Florida

Opinion filed December 20, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-333

Lower Tribunal No. 96-5184
_____

**William Shaun Jordan,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal under Florida Rule of Appellate Procedure 9.141(b)(2) from the Circuit Court for Miami-Dade County, Victoria R. Brennan, Judge.

William Shaun Jordan, in proper person.

Pamela Jo Bondi, Attorney General, and Magaly Rodriguez, Assistant Attorney General, for appellee.


Before SUAREZ, LAGOA, and SCALES, JJ.

LAGOA, J.

William Shaun Jordan ("Jordan") appeals the denial of his third Rule 3.800(a) post-conviction motion arguing that his sentences are illegal because of the "stacking" of his three mandatory minimum sentences. For the reasons stated below, we affirm.

## I.    PROCEDURAL HISTORY

In 1996, during a drug sweep in South Miami Heights, Jordan used a firearm against one police officer and brandished it against two others. Jordan was charged with one count of attempted first degree murder of a law enforcement officer and two counts of aggravated assault on two different law enforcement officers. Following trial, Jordan was convicted of: (1) attempted second-degree murder of a law enforcement officer with a firearm (upon Officer Macken); (2) aggravated assault of a law enforcement officer with a firearm (upon Sergeant Gallagher); and (3) aggravated assault of a law enforcement officer with a firearm (upon Officer Guerrier).

The trial court sentenced Jordan to thirty years in prison on the attempted second-degree murder conviction (Macken), a consecutive five years in prison on the aggravated assault (Gallagher), and another consecutive five years in prison on the aggravated assault (Guerrier), for a total of forty years. Each conviction carried a three-year firearm minimum mandatory sentence to run consecutively, thereby, "stacking" to a nine-year minimum sentence.

On March 10, 2015, Jordan filed a motion (through counsel)[1] to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).[2] Jordan contended that the stacking of the minimum mandatory portions of the three sentences was impermissible because the evidence did not show that each use of the firearm by Jordan was a separate transaction or episode. The motion was summarily denied by the trial court in its order. That order was timely appealed to this Court, and this Court reversed, as we could not "determine from the record provided whether the consecutive three-year mandatory minimum sentences for multiple counts of aggravated assault with a firearm were allegedly committed during a single criminal episode and whether such sentences are illegal." Jordan v. State, 182 So. 3d 819, 821 (Fla. 3d DCA 2016). This Court remanded "for the [trial] court to conduct any further hearing as necessary or to enter an order with record attachments conclusively establishing Jordan is not entitled to relief." Id.

On remand, on March 15, 2016, the trial court entered a detailed order denying Jordan's motion for post-conviction relief, and attached portions of the record conclusively establishing that Jordan was not entitled to relief. This appeal ensued.[3]

---

[1] While both the trial court and the State characterize the March 10, 2015, motion as pro se, the motion appears to have been signed by Clayton R. Kaeiser as attorney for defendant.

[2] We note that the March 10, 2015 motion was Jordan's third Rule 3.800(a) motion, and his fifth motion for post-conviction relief.

II.    ANALYSIS

On appeal, Jordan argues the same issue raised in his March 10, 2015, motion, namely whether the "stacking" of mandatory minimum sentences is permitted under the circumstances of this case. The answer turns on whether the incidents in the instant case consisted of separate criminal episodes, or alternatively, if a single criminal episode, the incidents caused injury to multiple victims or multiple injuries to one victim, thus bifurcating the episode for sentencing purposes.

A.    Legal Standard for Stacking Mandatory Minimums

As recognized by the Florida Supreme Court, "[a]ny discussion as to this issue should begin with our decision in Palmer v. State, 438 So.2d 1 (Fla.1983)." State v. Sousa, 903 So. 2d 923, 924 (Fla. 2005). In Palmer, the defendant walked into a funeral parlor, brandished a gun, and simultaneously robbed thirteen people, though with no injury or discharge of the gun. Palmer, 438 So. 2d at 2. The trial court imposed the three-year mandatory minimum consecutively as to each of the 13 counts of robbery for which the defendant was convicted. Id. The Florida Supreme Court reversed on the ground that the Legislature had not authorized the stacking of mandatory minimums for multiple offenses committed in the same

---

[3] On February 14, 2017, this Court granted Jordan's petition for a belated appeal of the March 15, 2016 order, as Jordan had timely placed his appeal into the hands of prison officials.

4

criminal episode.  Id. at 3-4 (implicitly finding that all the offenses occurred in the same episode).[4]  The Florida Supreme Court, however, left open the possibility of "consecutive mandatory minimum sentences for offenses arising from separate incidents occurring at separate times and places."  Id. at 4.

Next, in State v. Thomas, 487 So. 2d 1043 (Fla. 1986), the Florida Supreme Court limited Palmer's holding with regard to multiple offenses in the same criminal episode, specifically permitting stacking of mandatory minimums "where a defendant committed two separate and distinct offenses involving multiple victims during one criminal episode."  Sousa, 903 So. 2d at 925 (describing the holding in Thomas).  In Thomas, the defendant shot a woman in her bedroom, but that victim managed to escape outside before the defendant shot her again. Thomas, 487 So. 2d at 1044.  The victim's son attempted to intervene outside the trailer, but the defendant fired his gun at the son (and missed).  Id.  The Florida Supreme Court upheld the stacking of the mandatory minimum for the attempted murder of the woman and the aggravated assault of the son.  Id. at 1044-45.

_____

[4] "In Wilson, where the defendant possessed a gun while kidnapping the one victim and then taking her by car a short distance and sexually assaulting her, we held that the offenses occurred during a single episode.  In State v. Ames, 467 So.2d 994 (Fla.1985), where the defendant possessed a gun while breaking into a woman's house, robbing her in one room and raping her in another, we held that the three offenses occurred during a single episode."  State v. Thomas, 487 So. 2d 1043, 1044 (Fla. 1986).

5

In State v. Christian, 692 So. 2d 889 (Fla. 1997), during a bar fight, the defendant shot the first victim three times from behind, then shot and wounded the second victim, who had attempted to intervene. Id. at 890. The Florida Supreme Court rejected the argument that stacking was not permitted because these offenses occurred in the same criminal episode. Id. Generally,

> for offenses arising from a single episode, stacking is permissible where the violations of the mandatory minimum statutes cause injury to multiple victims, or multiple injuries to one victim. The injuries bifurcate the crimes for stacking purposes. The stacking of firearm mandatory minimum terms thus is permissible where the defendant shoots at multiple victims, and impermissible where the defendant does not fire the weapon.

Id. at 890-91 (footnotes omitted).[5]

---

[5] Subsequent to Christian, the Florida Legislature amended section 775.087, Florida Statutes, to add new subsection (2)(d), which reads:

> It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.

§ 775.087(2)(d), Fla. Stat. (1999). While this provision does not apply to the instant case, as Jordan was sentenced prior to the amendment, the Florida Supreme Court has held that the amendment is consistent with its decisions predating the amendment, particularly Christian and Thomas. See Sousa, 903 So. 2d at 927.

The Florida Supreme Court again addressed stacking in <u>Sousa</u>. In <u>Sousa</u>, the defendant committed two counts of attempted murder with a firearm and one count of aggravated assault with a firearm in rapid succession.[6] <u>Sousa</u>, 903 So. 2d at 924. The Florida Supreme Court upheld the stacking of the mandatory minimums for the two attempted murders with a firearm and the aggravated assault with a firearm. <u>Id.</u> at 928.

Under Florida law, stacking minimum mandatory sentences is therefore generally permissible when separate criminal episodes occur and generally not permissible when all offenses occur as part of a single criminal episode. But, when such offenses occur as part of a single criminal episode, "stacking is permissible where the violations of the mandatory minimum statutes cause injury to multiple victims, or multiple injuries to one victim. The injuries bifurcate the crimes for stacking purposes. The stacking of firearm mandatory minimum terms thus is permissible where the defendant shoots at multiple victims, and impermissible where the defendant does not fire the weapon." <u>Christian</u>, 692 So. 2d at 890-91 (footnotes omitted). We now apply these legal standards to the case before us.

B.     <u>Application to the Instant Case</u>

---

[6] In <u>Sousa</u>, it is clear that two of the victims were shot in a single criminal episode. The opinion, however, is unclear as to whether the offense against the third victim occurred in the same or a separate criminal episode.

In the instant case, the facts established at trial show that Jordan's offenses were not committed as part of a single episode. In relevant part, on the day in question, Sergeant Gallagher (the supervisor), Officer Macken (the driver), and Officer Guerrier (the rookie) were conducting a drug sweep operation of the South Miami Heights area in a black Chevy Blazer. As they turned on SW 113th Place, they observed four males standing together, one of whom was holding what appeared to be a marijuana cigarette. Macken stopped the vehicle, and Gallagher and Guerrier exited from the right side, with Macken's exit being delayed as he waited for a vehicle to pass.

Gallagher and Guerrier approached and gestured for two of the males to place their hands on a vehicle parked nearby. The two males complied and were searched while Jordan and the fourth male stood by and watched. After the approaching car passed the Blazer, Macken exited. As he did so, Gallagher instructed Jordan to place his hands on the vehicle too, but Jordan turned and fled west, first running behind, then around, a residence. Macken unholstered his firearm and pursued Jordan on foot, yelling at him to stop and identifying himself as police.

As Jordan finished his route around the residence and returned to 113th Place, he ran northeasterly towards 189th Street, and then easterly along 189th Street. Somewhere along this path, Jordan turned and pointed a gun at Macken.

Macken fired a shot at Jordon and missed.  Jordan ran a few more steps, turned, fired a shot, and missed.  Jordan then ran south between two residences and positioned himself along the east side of a wall separating the patio area of the duplex homes.  Macken ran to the west side of the wall and leaned his back against it.  Macken and Jordan exchanged demands that the other surrender.

Macken reached around the wall with his right hand holding his gun.  Jordan fired a sequence of shots along the wall, striking Macken in the face.  Macken retreated northwest to the corner of the residence, away from the patios and the separating wall.  A few minutes later, Jordan appeared from behind the wall and ran southeasterly.  Jordan looked back and fired a sequence of shots at Macken, some of which struck Macken in the leg.

While Macken was pursuing and exchanging fire with Jordan, Gallagher and Guerrier were arresting and placing the two males into the Blazer.[7] Gallagher and Guerrier entered the vehicle, and Gallagher began driving easterly along SW 189th Terrace.  Jordan suddenly emerged from between two houses.  As the Blazer approached and passed by, Jordan raised the gun with one hand, pointing it at the vehicle and continuing to walk.  Seeing the gun, Gallagher accelerated past and away from Jordan.  As Gallagher watched Jordan in the side view mirror, Jordan

---

[7] The record is unclear as to the whereabouts of the fourth male.

raised his other hand to the gun and tracked the Blazer. Jordan eventually lowered his gun and walked off to the north.

Gallagher stopped the vehicle at the end of the block, instructed Guerrier to stay with the vehicle, and ran back to the location he last saw Jordan. Gallagher observed Jordan leaning up against the wall of a nearby home, fiddling with his gun (possibly reloading or clearing a jam). Jordan saw Gallagher running towards him and raised his gun with both hands. Gallagher fired four shots at Jordan, all missing. However, Jordan fell to the ground and slipped away back north towards 189th Street.

After a brief confrontation with Officer Tookes, who was protecting the injured Macken, Jordan fled east along 189th Street, then southeasterly towards 189th Terrace east of 113th Avenue. By this time, Guerrier was driving the vehicle with the two men held in the blazer. Jordan reappeared near Guerrier in the vehicle. As he ran past Guerrier in the vehicle, he pointed his gun at her.[8]

We therefore find that the record evidence presented at trial conclusively refutes Jordan's argument that each of the offenses for which Jordan was convicted were committed during a single criminal episode. Cf. Jordan v. State, 182 So. 3d 819, 821 (Fla. 3d DCA 2016) ("[W]e cannot determine from the record provided whether the consecutive three-year mandatory minimum sentences for multiple

_____

[8] Jordan was arrested later that day after significant intervening events not relevant to this appeal.

10

counts of aggravated assault with a firearm were allegedly committed during a single criminal episode and whether such sentences are illegal."). Accordingly, the stacking of the mandatory minimums was permissible, and the trial court properly denied Jordan's rule 3.800(a) post-conviction motion.

AFFIRMED.